## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**KABEER KHAN**,

      Plaintiff,

      v.

**7-ELEVEN, INC.**,

      Defendant.

Case No.: 1:14-cv-13384-WGY

## ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

The defendant 7-Eleven, Inc. ("7-Eleven") answers the complaint, paragraph by corresponding paragraph, and says:

1. Admit.

2. Admit.

3. 7-Eleven admits this allegation to the extent that the plaintiff was a franchisee of 7-Eleven and operated a 7-Eleven convenience store located at 1040 North Main Street, Fall River, Massachusetts, until 7-Eleven terminated the franchise on August 12, 2014.

4. Admit.

5. 7-Eleven admits that, to obtain the franchise, the plaintiff paid a "fee" to 7-Eleven, an initial investment in inventory and a goodwill payment to the seller.  The total amount alleged to be paid is incorrect and is therefore denied.

6. Deny.

7. Deny.

8. Deny.

9.      7-Eleven admits that the allegations of this paragraph accurately recite a portion of the Notice of Material Breach delivered to Plaintiff on August 7, 2014.  7-Eleven denies that a copy of the Notice of Material Breach was attached to the service copy of the Complaint it received.

10.      7-Eleven admits that 7-Eleven investigated the practices at the plaintiff's store, and that the fraudulent scheme at Plaintiff's store has been ongoing for a considerable period of time.   Otherwise, the plaintiff's characterization of 7-Eleven's claims are denied.

11.       7-Eleven admits that it showed Plaintiff a video-recorded example of the fraud. Plaintiff's description of the length and contents of that video-recorded example are inaccurately described in Plaintiff's complaint and therefore denied.

12.      Deny.

13.      Deny.

14.      7-Eleven admits that credit card, debit card and Electronic Benefit Transfer ("EBT") transactions that are processed through its Retail Information System are settled into accounts it controls.  7-Eleven denies the remaining allegations of this paragraph.

15.      7-Eleven admits that the allegations of this paragraph accurately recite a portion of the Notice of Material Breach delivered to Plaintiff on August 7, 2014.

16.      Deny.

17.      Deny.

18.      Deny.

19.      7-Eleven admits that counsel for the plaintiff contacted counsel for 7-Eleven and made allegations similar to those in this paragraph.

20.     7-Eleven admits that 7-Eleven conducted periodic audits of the physical inventory in the plaintiff's store (and not financial audits) pursuant to Section 14 of the Franchise Agreement; otherwise, 7-Eleven denies the allegations of this paragraph.

21.     Deny.

22.     7-Eleven admits that it delivered a Notice of Termination to plaintiff on August 12, 2014.  The allegations of this paragraph inaccurately describe the contents of that letter and are therefore denied.

## COUNT I - BREACH OF CONTRACT

23.     7-Eleven restates its responses to paragraphs 1 through 22.

24.     Deny.

25.     Deny.

26.     Deny.

27.     Deny.

## COUNT II - INTENTIONAL INTERFERENCE WITH CONTRACT

28.     7-Eleven restates its responses to paragraphs 1 through 27.

29.     Deny

30.     Deny.

31.     Deny.

## COUNT III - CONSTRUCTIVE TERMINATION

32.     7-Eleven restates its responses to paragraphs 1 through 31

33.     Deny.

34.     Deny.

35.     Deny.

36.    Deny.

37.    Deny.

38.    Deny.

## COUNT IV - VIOLATION OF THE COVENANT
## OF GOOD FAITH AND FAIR DEALING

39.    7-Eleven restates its responses to paragraphs 1 through 38.

40.    Admit.

41.    Deny.

42.    Deny.

## COUNT V - VIOLATION OF MGL 93A

43.    7-Eleven restates its responses to paragraphs 1 through 42.

44.    This allegation is a legal conclusion that requires no response.

45.    Deny.

46.    Deny.

## FIRST DEFENSE - FAILURE TO STATE A CLAIM

The plaintiff fails to state a claim for relief because, among other things, the plaintiff fails to allege either generally or specifically the occurrence, performance, or waiver of conditions precedent.

## SECOND DEFENSE - UNCLEAN HANDS

The plaintiff cannot recover on any of the counterclaims because of the plaintiff's unclean hands, that is, because of the plaintiff's dishonesty, fraud, and criminal conduct under 7 U.S.C. § 2024, in the operation of his 7-Eleven store.

## THIRD DEFENSE - SOPHISTICATED PLAINTIFF

The plaintiff cannot claim unfair or deceptive practices under MGL Ch. 93A because the plaintiff is not an unsophisticated consumer but a sophisticated party to a commercial franchise relationship. In Paragraph 31(k) of the Franchise Agreement, the plaintiff acknowledged that the plaintiff received sufficient time and opportunity to consult with lawyers and other business and financial advisors about the potential benefits and risks of entering that Franchise Agreement. Thus, the plaintiff understood that the Franchise Agreement required accurate reporting of purchases and sales, including EBT transactions, and that a failure to do so could result in termination of his franchise.

## FOURTH DEFENSE - CONTRACTUAL WAIVER OF DAMAGES

The plaintiff's demand for damages is barred to the extent that, in Paragraph 31(j) of the Franchise Agreement, the plaintiff waived, to the fullest extent permitted by law, any right to or claim for punitive, exemplary, incidental, indirect, special, or consequential damages against 7-Eleven arising out of any cause whatsoever.

## FIFTH DEFENSE - ESTOPPEL AND WAIVER

The plaintiff's claims are barred by the doctrines of estoppel and waiver. The plaintiff's misconduct estops the plaintiff from claiming any breach of the Franchise Agreement and otherwise caused a waiver of the rights and benefits under the Franchise Agreement.

## SIXTH DEFENSE - PRIOR BREACH

The plaintiff's claims are barred by the plaintiff's prior breaches of the Franchise Agreement.

**SEVENTH DEFENSE - FAILURE OF CONDITION PRECEDENT**

The plaintiff's claims fail because the plaintiff failed to await the occurrence of a condition precedent, i.e., termination of the Franchise Agreement, before suing for breach of the Franchise Agreement based on the termination by 7-Eleven.

**COUNTERCLAIM FOR INJUNCTIVE AND OTHER RELIEF**

The counter-plaintiff 7-Eleven, Inc. ("7-Eleven") sues the counter-defendant Kabeer Khan (the "Franchisee") and alleges:

**Parties**

1.      7-Eleven is a corporation organized and existing under the laws of the state of Texas with its principal place of business in Dallas, Texas.

2.      The Franchisee is an individual and a citizen of Fall River, Massachusetts.

**Jurisdiction and Venue**

3.      This Court has supplemental jurisdiction to hear the counterclaims alleged herein under 28 U.S.C. § 1367(a) as they form part of the same case or controversy under Article III of the United States Constitution.

4.      If brought as an independent proceeding, this Court would have subject matter jurisdiction under 15 U.S.C. § 1121 and 29 U.S.C. §§ 1331 and 1338 as it alleges claims founded upon the trademark laws of the United States.

5.      Venue is proper in this District 28 U.S.C. § 1391 because the Franchisee resides and operates the business that is the subject of this action within the Commonwealth of Massachusetts.

## The 7-Eleven Franchise System

6.      7-Eleven is an operator and franchisor of convenience store retailing businesses and is the premiere brand in that industry.

7.      7-Eleven has developed methods and procedures—called a "system"—used in the operation of convenience store businesses. 7-Eleven's system is the culmination of decades of 7-Eleven's experience and investment of resources into the system's development and refinement.

8.      7-Eleven owns a number of federally-registered trademarks and service marks, including 7-Eleven®, Slurpee® and Big Gulp®. These marks and the 7-Eleven® mark in particular identify and distinguish 7-Eleven's products and services from its competitors' products and services.

9.      7-Eleven advertises and promotes its marks throughout the United States and in the Commonwealth of Massachusetts.  As a result of these expenditures, consumers associate 7-Eleven's marks with a uniform method of delivery of consistently high-quality products and services in clean and attractive facilities operated by persons following 7-Eleven's system.

10.      Through written franchise agreements, 7-Eleven licenses the use of its marks and system to others and requires them to operate uniformly and in accord with 7-Eleven's specifications in order to protect 7-Eleven's image and brand.  In addition, a 7-Eleven franchisee must to pay to 7-Eleven a defined percentage of its gross income, called the "7-Eleven Charge."

11.      Other salient features of the 7-Eleven franchise system include:

A.      **The Open Account**:  7-Eleven extends financing to its franchisees for use in the operation of franchised stores.  The amount financed by 7-Eleven and the balance due from its franchisee is maintained in an account defined in the franchise agreement as the "Open Account."  Essentially, the Open Account is a running working capital account that carries the outstanding balance that 7-Eleven has loaned to the franchisee.

B.   **Retail Information Systems**:   7-Eleven franchisees must use a proprietary Retail Information System computer system and software having various point of sale, inventory management, and back-office functions.  Through this Retail Information System, a franchisee reports virtually all store transactions to 7-Eleven, including sales, inventory acquisitions and adjustments, payroll, etc.

C.   **Inventory Reporting & Accounting**:   A franchisee can finance its purchase of store inventory through the Open Account or purchase inventory with cash. In either instance, the franchisee is obligated to report the inventory transaction and submit the related invoice to 7-Eleven.  This inventory is accounted under 7-Eleven's system using a retail accounting system, meaning that inventory in a store is valued at the retail selling price determined by the franchisee.   Thus, when a franchisee buys merchandise, the invoice is transmitted to 7-Eleven together with the value of the purchased merchandise at retail.  7-Eleven then increases retail book inventory by the retail value of that merchandise.

D.   **Cash Reports**:   7-Eleven Franchisees must prepare and transmit to 7-Eleven a daily cash report ("Cash Report").  Among other things, the Cash Report sets forth the daily sales and whether those sales were for cash or credit.  The Daily Cash Report also accounts for deductions from cash receipts that affect the daily deposit, such as a franchisee's cash payment to a vendor to acquire merchandise for sale in the store.

E.   **Minimum Net Worth**:   Most 7-Eleven franchised stores must maintain a "Minimum Net Worth" of $15,000.00.  A franchisee's "Net Worth" is essentially the sum total of its assets minus its liabilities.  The Minimum Net Worth requirement is intended to protect 7-Eleven's investment in the store, its exposure for the Open Account and to assure that a 7-Eleven franchisee is financially vested in the operation of their stores.

F.   **Monthly Financials**:   7-Eleven prepares monthly financial reports for each store from its bookkeeping records.  This information in its bookkeeping records is supplied primarily by the Franchisee and particularly the Cash Reports.  The reports include, among other things, an income statement, balance sheet and calculation of the Open Account balance and Net Worth.

### The Franchise Relationship with Kabeer Khan

12.   On October 18, 2006, the counter-defendant Kabeer Khan and 7-Eleven entered a franchise agreement, ancillary agreements and addenda (collectively the "Franchise Agreement") for 7-Eleven Store No. 32449B, located at 1040 N. Main Street, Fall River, Massachusetts,

02720 (the "Store"). A copy of the Franchise Agreement is attached to this complaint as **Exhibit A**.

13.     Before offering the Store to the Franchisee, 7-Eleven selected the Store's location, entered a lease with the property owner, and physically improved the premises. Through the Franchise Agreement, 7-Eleven subleased the Store premises to the Franchisee.

14.     7-Eleven also outfitted the Store with equipment and furnishings necessary to the operation of a convenience store, such as coolers, soda fountains, grills, a safe, cash registers, and so on (the "Equipment"). 7-Eleven leases the Equipment to the Franchisee through the Franchise Agreement.

15.     After the Franchisee entered the Franchise Agreement, he learned 7-Eleven's system. This included extensive training and ongoing support concerning 7-Eleven's operational procedures, marketing programs, merchandising methods, accounting systems, proprietary software and so on.

16.     For nearly eight years, Franchisee has operated the Store and enjoyed the benefits of the 7-Eleven system.

<u>**Franchisee's Breach of the Franchise Agreement**</u>

17.     Upon being alerted to unusual sales patterns and reports of illegal activity involving EBT transactions at the Store, 7-Eleven commenced an investigation of Franchisee's store.

18.      7-Eleven reviewed the Store's data and security camera video from various times between October 2013 and February 2014, among other periods.  Its investigation uncovered a pervasive and fraudulent enterprise of accepting public welfare benefits, commonly known as "EBT," in exchange for cash and ineligible merchandise like cigarettes. To perpetrate this fraud,

Franchisee's brother and store manager, Sameer Khan, would engage in abusive use of Point of Sale System ("POS") functions, such as memory cancelations, 25-cent transactions, grocery non-tax, and transaction voids.  Samplings and other data have led 7-Eleven to conclude that this illegal scheme at Franchisee's store has been ongoing for years and permeates all levels of its operations.

19.    For example, in a portion of its data review, 7-Eleven identified forty-one transactions involving EBT card payments followed by use of the "no sale" function on the cash register.  Upon review of the video for these transactions, 7-Eleven observed that twenty-eight of those forty-one transactions were fraudulent—the video repeatedly showed the Franchisee's brother and store manager Sameer Khan paying customers cash in exchange for EBT payments at a rate of approximately 50 cents per $1 of EBT benefits.  In each of these instances, the transaction was improperly and inaccurately reported to 7-Eleven.

20.    The video also showed Sameer Khan conducting 214 non-scanned sales (i.e., by using the "grocery non-tax" button to suggest that the customer was purchasing a grocery item without a UPC label or an item that was not in 7-Eleven's extensive database of UPC codes).  Of these 214 transactions, 160 involved blatant EBT fraud.  For example, Sameer Khan is shown on video ringing items not approved for EBT sales (*e.g.*, cigarettes) as a grocery non-tax item and allowing the customer to pay with an EBT card. The video also shows Sameer Khan ringing EBT sales with no customer present and ringing EBT sales with no merchandise present.  In each of these instances, the transaction was improperly and inaccurately reported to 7-Eleven.

21.    These non-scanned sales transactions identified as fraudulent almost always involved the acceptance of EBT payment in exchange for cash from the POS register or from a

drawer below the POS register or the acceptance of EBT benefits in exchange for ineligible merchandise..

22.    7-Eleven also observed 125 voided transactions at the POS register, all of which were conducted by Sameer Khan and all of which were fraudulent and inaccurately reported to 7-Eleven.

23.    7-Eleven confirmed the activities shown in the video by conducting "secret shops" and other in-person surveillance of the Store, during which Sameer Khan was observed to be accepting EBT in exchange for cash and for ineligible merchandise.

24.    In connection with the end of shift paperwork and/or preparation of the daily cash report for the Store, Sameer Khan and Franchisee would be required to balance and account for the shortages and overages in the cash drawer created through the illegal enterprise described above.

25.    Under the Franchise Agreement, the Franchisee is obligated to properly prepare and submit cash reports and, particularly at Paragraph 12(c)(3), agrees that "all information that [Franchisee] and [Franchisee's] employees provide to 7-Eleven will be truthful, accurate, complete and in compliance with all applicable laws …."    The above-described scheme could not have occurred but for the improper and inaccurate recording of store transactions and fraudulent manipulation of the cash reporting process to 7-Eleven.

### 7-Eleven Issues A Notice of Material Breach to Franchisee

26.    On August 7, 2014, 7-Eleven delivered a Notice of Material Breach to the Franchisee.  A copy of this Notice of Material Breach is attached as **Exhibit B**.

27.    The Notice of Material Breach explains that the Franchisee materially breached the Franchise Agreement by failing to cause all transaction information to be properly,

accurately, truthfully, and completely reported to 7-Eleven. The Notice of Material Breach further explains how Franchisee could cure the identified defaults and warned him that the deadline to cure would be 7 p.m. on Tuesday, August 12, 2014.

28.     Franchisee did not cure by 7 p.m. on Tuesday, August 12, 2014.

29.     Because Franchisee did not cure his breach, and per the terms of the Notice of Material Breach, the Franchise Agreement automatically terminated.

30.     7-Eleven also delivered to Franchisee a formal Notice of Termination on April 12, 2014.  A copy of the Notice of Termination is attached as **Exhibit C**.

31.     In both the Notice of Material Breach and the Notice of Termination, 7-Eleven declared the Store's sublease and the Equipment lease terminated and demanded that Franchisee comply with his post-termination obligations under the Franchise Agreement, including that Franchisee cease using its registered marks, quit the premises and deliver possession to 7-Eleven and transfer the Store's inventory to it.

## Franchisee Refuses to Comply

32.     Franchisee refuses to comply with 7-Eleven's demands and remains in possession of the Store, Equipment and inventory.

33.     Notwithstanding the Franchise Agreement's termination, Franchisee has continued to operate the Store and cause its business to be held out to the consuming public, and thereby falsely represented, as an authorized and duly licensed 7-Eleven® store.

34.     All conditions precedent to bringing this suit have occurred, have been satisfied, or have been waived.

## COUNT I -- INFRINGEMENT

35.     7-Eleven re-alleges paragraphs 1 through 34 above.

36.     The marks being used by the Franchisee are identical to 7-Eleven's marks.

37.     Franchisee offers identical goods to the public and moves in identical channels of trade as 7-Eleven and duly licensed 7-Eleven franchisees.

38.     Franchisee's use of 7-Eleven's marks is without any oral or written consent of 7-Eleven and is likely to cause mistake or confusion in the minds of the public in violation of 15 U.S.C. § 1114(1)(a).

39.     Franchisee's actions charged above are being done knowingly and intentionally to cause confusion, mistake or to deceive.

40.     Franchisee has profited from his acts of infringement and 7-Eleven has suffered damages.

41.     7-Eleven is without an adequate remedy at law, because its marks are unique and represent to the public the identity, reputation and goodwill of 7-Eleven and its authorized franchisees, such that damages alone cannot adequately compensate for Franchisees' misconduct.

42.     Unless enjoined, Franchisee and those acting in concert with him will continue to use and infringe upon 7-Eleven's marks.   This threat of future injury to 7-Eleven's business identity, goodwill and reputation requires injunctive relief to prevent Franchisee's continued use of 7-Eleven's marks and to ameliorate and mitigate the harm being caused to 7-Eleven.

## COUNT II -- UNFAIR COMPETITION

43.     7-Eleven re-alleges paragraphs 1 through 42 above.

44.     Franchisee's use of 7-Eleven's marks along with any colorable variation thereof constitutes a passing off of the goods of the Franchisee as those of 7-Eleven in violation of 15 U.S.C. § 1125(a).

45.    By reason of the foregoing, 7-Eleven is substantially injured in its business, including harm to the goodwill associated with its marks.

46.    Franchisee's actions charged above are being done knowingly and intentionally to cause confusion, mistake or to deceive.

47.    7-Eleven is without an adequate remedy at law, because its marks are unique and represent to the public the identity, reputation and goodwill of 7-Eleven and its authorized franchisees, such that damages alone cannot adequately compensate for the Franchisee's misconduct.

48.    Unless enjoined, the Franchisee and those acting in concert with him will continue to use and infringe upon 7-Eleven's marks.  This threat of future injury to 7-Eleven's business identity, goodwill and reputation requires injunctive relief to prevent Franchisee's continued use of 7-Eleven's marks and to ameliorate and mitigate the harm being caused to 7-Eleven.

## COUNT III -- BREACH OF POST-TERMINATION OBLIGATIONS

49.    7-Eleven re-alleges paragraphs 1 through 48 above.

50.    Franchisee and 7-Eleven are parties and signatories to the Franchise Agreement.

51.    Franchisee has breached the Franchise Agreement's post-termination obligations, including without limitation those specified in Paragraphs 28(a) by, among other things:

    A.    Failing to surrender the Store and the Equipment;

    B.    Failing to transfer to 7-Eleven the Store's inventory; and

    C.    Failing to cease using the 7-Eleven marks and system.

52.    As a direct and proximate result of these breaches, 7-Eleven has suffered damages.

## COUNT IV – BREACH OF COVENANT NOT TO COMPETE

53.     7-Eleven re-alleges paragraphs 1 through 52 above.

54.     Under Paragraph 5(d) of the Franchise Agreement, Franchisee agreed that it would not, for a period of one year after termination, "maintain, operate, engage in, or have any financial or beneficial interest in, advise, assist, make loans to, or lease to, a Competitive Business" located at the Store or at the site of any former 7-Eleven store within two years of it being operated as a 7-Eleven store.

55.     Franchisee has breached Paragraph 5(d) by owning and continuing to operate a convenience store business at the Store after the Franchise Agreement's termination.

56.     Legitimate business interests support the post-termination obligations and, specifically, the covenant not to compete in Section 5(d) of the Franchise Agreements, including protection of 7-Eleven's:

        A.      Confidential business information;

        B.      Substantial relationships with prospective and existing customers;

        C.      Goodwill associated with its marks and related insignia and designs;

        D.      Goodwill associated with the Store location and in the area served by it; and

        E.      Investments in its specialized training.

57.     The restrictive covenant against competition in the Franchise Agreements is not overly broad or overlong and is reasonably necessary to protect 7-Eleven's legitimate business interests.

58.     The Franchisee's violation of the restrictive covenants has substantially and irreparably injured 7-Eleven.  Franchisee has exacerbated this harm by operating and holding out

his competitive business as a 7-Eleven® store, when it is not, thereby pirating goodwill rightfully belonging to 7-Eleven.

59.     7-Eleven is without an adequate remedy at law to address this harm and protect its legitimate business interest.  Indeed, until the Franchisee is ordered to abide by the covenant not to compete, 7-Eleven will continue to suffer substantial, irreparable injury to its business and reputation.

## COUNT V – EVICTION

60.     7-Eleven re-alleges paragraphs 1 through 59 above.

61.     Through the Franchise Agreement and the sublease contained therein, 7-Eleven leased to Franchisee the premises comprising the Store.

62.     Per its terms, the sublease terminates immediately upon the termination of the Franchise Agreement.

63.     The sublease having been terminated, 7-Eleven has made demand on Franchisee to quit the Store's premises.

64.     Notwithstanding 7-Eleven's demand and despite lacking any right, color or privilege to continue in occupancy, the Franchisee has refused to surrender possession of the Store's premises to 7-Eleven.

## COUNT VI – BREACH OF FRANCHISE AGREEMENT (DAMAGES)

65.     7-Eleven re-alleges paragraphs 1 through 64 above.

66.     In the Franchise Agreement, Franchisee agreed, among other things to pay its open account balance upon the discontinuance of 7-Eleven's financing.

67.     Franchisee breached the Franchise Agreement by failing to pay the open account balance upon 7-Eleven's discontinuance of financing.

68.     The Franchisee's breach caused 7-Eleven to suffer damages.

## COUNT VII  -- REPLEVIN

69.     7-Eleven re-alleges paragraphs 1 through 68 above.

70.     Under the Franchise Agreement, 7-Eleven leased to the Franchisee certain equipment located at the Store, including soda machines, coolers, cash registers, and other equipment necessary to operate convenience store.  7-Eleven owns this equipment.

71.     Upon termination of the Franchise Agreements, the Franchisees have no right to continue use or possess the equipment.

72.     Pursuant to the Security Agreement, which was entered into as part of the Franchise Agreements and included as an addendum thereto, Franchisee granted to 7-Eleven a security interest in and a lien on all Goods, including Equipment, Fixtures, and Inventory, and all proceeds thereof held or maintained at the Leased Premises or used in the ownership and operation of the Leased Premises.

73.     To the best of 7-Eleven's knowledge, information, and belief, the Equipment at the Leased Premises, along with the Goods, including the Equipment, Fixtures, and Inventory in which 7-Eleven possession an interest and superior right of possession has a value of $250,000.00.

74.     To the best of 7-Eleven's knowledge, information, and belief, all of the above described property is located at the Leased Premises.

75.     The property described above is wrongfully detained by the Franchisees.

76.     The property described above has not been taken for any tax, assessment, or fine pursuant to law.

77.    The property described above has not been taken under an execution or attachment against 7-Eleven's property.

## PRAYER FOR RELIEF

**WHEREFORE,** 7-Eleven requests the following relief:

A.    An order preliminarily and permanently enjoining the Franchisee, his agents, servants and employees, and those people in active concert or participation with him, from:

  1.    Using the 7-Eleven Trademarks or any trademark, service mark, logo or trade name that is confusingly similar thereto;

  2.    Otherwise infringing upon 7-Eleven's marks or using any similar designation, alone or in combination with any other components;

  3.    Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of the Franchisee's businesses, goods, or services; and

  4.    Causing a likelihood of confusion or misunderstanding as to the Franchisee's affiliation, connection or association with 7-Eleven and its franchisees or any of their goods and services.

B.    An order, pursuant to 15 U.S.C. § 1118, that all labels, signs, prints, packages, wrappers, receptacles, uniforms, logo items, and advertisements in the possession of the Franchisee, his affiliates, subsidiaries, officers, agents, servants and employees, and those people in active concert or participation bearing 7-Eleven's Trademarks, and all plates, molds, and other means of making the same, if any, be delivered to 7-Eleven at the Franchisee's cost;

C.    An order requiring the Franchisee to eliminate his advertising under 7-Eleven's Trademarks or any other confusingly similar designations from all media including, but not limited to, websites, newspapers, flyers, coupons, promotions, signs, telephone books, telephone directory assistance listings and mass mailings, all at the Franchisee's cost;

D.    An order requiring the Franchisee to file with the Court and to serve upon 7-Eleven's counsel within thirty (30) days after entry of any injunction or order, a written report, under oath, setting forth in detail the manner in which he has complied with such injunction or order;

E.    An award and judgment for damages, including all profits made by the Franchisee, caused by Franchisee's infringement and unfair competition;

      F.     An order preliminarily and permanently enjoining the Franchisee, his agents, servants and employees, and those people in active concert or participation with him from "maintain[ing], operat[ing], engag[ing] in, or hav[ing] any financial or beneficial interest in, advis[ing], assist[ing], mak[ing] loans to, or leas[ing] to, a Competitive Business" located at the Store or at the site of any former 7-Eleven store within two years of it being operated as a 7-Eleven store for one year after termination;

      F.     An order of specific performance requiring the Franchisee to surrender the Leased Premises, the 7-Eleven Equipment, and 7-Eleven's confidential information;

      G.     An award and judgment for possession of the Store premises and such writs and executions as may be necessary to aid 7-Eleven in dispossessing Franchisee from the same;

      H.     An order and judgment for replevin of the equipment leased to Franchisee and such writs and executions as may be necessary to aid 7-Eleven in dispossessing Franchisee from the same;

      I.     An order and judgment for replevin of the collateral pledged to 7-Eleven as security for Franchisee's debt and such writs and executions as may be necessary to aid 7-Eleven in dispossessing Franchisee from the same;

      J.     An award and judgment for damages arising from Franchisee's breach of the Franchise Agreement.

      K.     An award to 7-Eleven of its attorneys' fees and costs pursuant to the Lanham Act; and

      L.     Such other and further relief as the Court deems just and appropriate.

Dated:  August 26,  2014

Respectfully submitted,

7-ELEVEN, INC.,
By its attorneys,


/s/ Carolyn A. Alenci
Steven M. Cowley (BBO #554534)
Carolyn A. Alenci (BBO# 675744)
DUANE MORRIS, LLP
100 High Street, Suite 2400
Boston, MA  02110
Tel:  1-857-488-4200
Fax:  1-847-488-4201
smcowley@duanemorris.com
caalenci@duanemorris.com


*Of Counsel*

Christian C. Burden
Quarles & Brady LLP
101 E. Kennedy Blvd., Ste. 3400
Tampa, Florida 33602
Tel: (813) 387-0265
chris.burden@quarles.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on August 26, 2014.  An additional copy of the foregoing was served by first class mail, postage prepaid and by email on John P. Francoeur, Levin & Levin, 138 Rock Street, Fall River, Massachusetts 02722 (jpf@levin4law.com).


*/s/ Carolyn A. Alenci*
Carolyn A. Alenci