# EXHIBIT B



**NOTICE OF MATERIAL BREACH**

August 7, 2014

**BY PERSONAL DELIVERY**

Kabeer Khan
1040 North Main Street
Fall River, MA 02720-2628

    Re:   <u>7-Eleven Store No. 32449B</u>

Dear Mr. Khan:

1. You signed a Store Franchise Agreement (the "**Franchise Agreement**") dated October 18, 2006, pursuant to which, among other things, 7-Eleven leased to you certain equipment and real property presently described as 7-Eleven Store No. 32449B ("**Store 32449B**") located at 1040 North Main Street, Fall River, Massachusetts, 02720-2628.

2. All terms not separately defined herein shall have the same meanings as defined in the Franchise Agreement.

3. In the Franchise Agreement, you covenanted and agreed, among other things, that you would:

    a) Cause all sales of Inventory to be properly recorded at the time of sale at the retail prices set by you and generally offered by you to customers of the Stores;

    b) Prepare and furnish to 7-Eleven actual sales data;

    c) Prepare and furnish to 7-Eleven daily summaries of Purchases;

    d) Furnish to 7-Eleven copies of invoices for Purchases;

    e) Provide 7-Eleven with truthful, accurate and complete information in compliance with all applicable laws and such policies that 7-Eleven may implement from time to time;

    f) Pay all sales, payroll and income taxes with regard to the operation of the Store;

    g) Maintain a high ethical standard in the conduct of the franchised business and in the operation of the Stores;

Mr. Kabeer Khan
August 7, 2014
Page 2

    h) Not commit any act which may adversely affect or be detrimental to 7-Eleven, other 7-Eleven franchisees, the 7-Eleven Image or the 7-Eleven System; and

    i) Devote your best efforts to the business of the Stores and maximization of the Stores' sales and gross profit, and cause the Stores to be operated only pursuant to the 7-Eleven System and in a manner that will enhance the 7-Eleven Image.

4. You have materially breached the Franchise Agreement and failed substantially to comply with your obligations under it because you failed to cause all transaction information to be properly, accurately, truthfully and completely recorded and reported to 7-Eleven. Specifically, 7-Eleven has investigated Store 32449B and determined that you and your employees have engaged in a pervasive scheme to defraud by providing purposely inaccurate information through 7-Eleven's point of sale and cash-reporting systems. This purpose of this scheme is to further an enterprise of accepting EBT ("Electronic Benefit Transfers") in exchange for cash and ineligible products like cigarettes.

    a) 7-Eleven's review of the POS and Retail Information System data generated in October 2013 through February of 2014 revealed an extraordinary number of non-scanned sales and voided transactions. Of the more than 300 video-recorded transactions reviewed by 7-Eleven during this period, 7-Eleven observed a staggering amount of fraud, involving POS memory cancelations, 25 cent transactions, non-scanned sales ("grocery non-tax"), and voided transactions.

    b) In its review, 7-Eleven observed forty-one transactions involving EBT followed by no sale. Twenty-eight of those transactions were obviously fraudulent. In repeated instances, the video recorded transactions show your brother and store manager Sameer Khan paying customers cash in exchange for these fraudulently-reported EBT transactions.

    c) Sameer Khan was also recorded on video during this time conducting 214 non-scanned sales (using most frequently the "grocery non-tax" register function). Of these 214 non-scanned sales, there were more than 160 instances of obvious fraud involving EBT. For example, Sameer Khan is shown on video ringing items not approved for EBT sales (e.g., cigarettes) and allowing a customer to pay with an EBT card, ringing EBT sales with no customer present and ringing EBT sales with no merchandise present. The latter transactions almost always involved the acceptance of EBT payment in exchange for cash that was removed from the POS register or oftentimes from a white drawer below the POS register. Each of the more

Mr. Kabeer Khan
August 7, 2014
Page 3

      than 160 non-scanned sales transactions were inaccurately reported to 7-Eleven and used to further a pervasive, fraudulent scheme of accepting EBT payment in exchange for cash and ineligible merchandise.

    d) 7-Eleven observed 125 voided transactions conducted at the POS register nearly all of which were undertaken by store manager Sameer Khan, each one of which was fraudulent.

    e) 7-Eleven's observations are not limited to the above time period and its evidence includes similarly fraudulent activity occurring throughout 2013 and 2014. The activity was confirmed both on video and through in-person shops where your brother Sameer Khan was repeatedly seen accepting EBT in exchange for cash payments and EBT for ineligible merchandise.

    f) The above scheme could not have occurred but for the fraudulent manipulation of the cash reporting process to 7-Eleven whose records reflect that you undertake and transmit.

    g) The above conduct is despicable, a violation of the public trust and incontrovertible proof that you do not value your relationship with 7-Eleven, much less appreciate the harm being caused to its brand.

5. You have three Business Days (excluding Saturday, Sunday and legal holidays) after your receipt of this Notice of Material Breach to Cure (as hereinafter defined) the foregoing material breaches. If you do nothing in response to this notice or undertake less than a full Cure, the Franchise Agreement will then terminate without further notice to you. Your Cure is due not later than 7:00 p.m. on Tuesday, August 12, 2014 and shall be provided to 7-Eleven's lawyer Christian C. Burden, Quarles & Brady, LLP, 101 E. Kennedy Blvd, Suite 3400, Tampa, Florida 33602 (813-387-0300 / chris.burden@quarles.com) or at such earlier time as you may arrange reasonably in advance. At your request, Mr. Burden will meet with you or your lawyer in Massachusetts at a mutually-agreeable place (with at least 24 hours' notice to him); otherwise, your Cure will be due at or delivered to his office by the deadline. Time is of the essence in your performance of this obligation.

6. Your Cure of the material breaches shall consist of such actions as 7-Eleven determines to be reasonably necessary to restore it to the same or substantially the same condition it would have held but for your breaches. With respect to the identified breaches, these cures include:

Mr. Kabeer Khan
August 7, 2014
Page 4

    a) A full, accurate and complete accounting of <u>all</u> fraudulently-reported sales, voids, EBT payments, and other transactions to 7-Eleven from January 1, 2012 to the present day. This includes identification by transaction, merchandise, date and monetary amount collected by you along with any fraudulently-reported sales that were attendant to the transaction. You are warned that that 7-Eleven does not consider any failure by you to have adequate recordkeeping of the frauds committed an excuse for your failure to render the full, accurate and complete accounting to it.

    b) A narrative in your own, legible handwriting detailing the frauds undertaken at your store, the methods of fraud and the proceeds realized from it. The narrative shall also describe why 7-Eleven should reasonably expect you and your employees to conduct yourselves honestly in all future transactions and in reporting to 7-Eleven in the future. The latter requirement is especially critical – the conduct which has occurred in your store is of such a pervasive and long-standing character that 7-Eleven has grave doubts concerning your ability to restore the confidence and trust necessary to a functioning franchise relationship.

    c) A certified check payment to 7-Eleven of $10,000.00 to compensate it for the expenses of its investigation of the Store, including the time of its Asset Protection Personnel, legal expenses, including counsel's fees, travel, consultant and retained investigator's fees and other charges and costs incurred by 7-Eleven attendant to its review and investigation of your store.

    d) You have fully complied in all respects with the Franchise Agreement between the date of this Notice and the date of your Cure.

    e) 7-Eleven reserves the right to reconsider and expand its cure of the identified breaches dependent upon and in consideration of the accounting due from you as specified above. If a further cure is due, 7-Eleven will notify you separately and provide such additional time as may be required, if any, under the Franchise Agreement and applicable law.

7. Concurrent with this Notice, 7-Eleven is taking other actions necessary to protect its interests and rights under the Franchise Agreement. Provided you timely and fully render the Cure as detailed above in a manner and method satisfactory to 7-Eleven, 7-Eleven will restore any discontinued services or products to the Store, such as money orders and pre-paid cards, as

Mr. Kabeer Khan
August 7, 2014
Page 5

      soon as reasonably practical. If at any point, 7-Eleven believes that you are not complying with your Franchise Agreement during the period of time you have to Cure, or thereafter, 7-Eleven may take other actions as it deems necessary to protect its financial interests.

8. If you do not timely render the Cure as detailed above in a manner or method satisfactory to 7-Eleven, the Franchise Agreement **will terminate automatically and without further notice to you**. Again, you are warned that time is of the essence and your time to render the Cure to 7-Eleven cannot be extended, waived or modified except in writing by 7-Eleven. Once the time is expired, you no longer have a right to cure irrespective of any later efforts to tender the Cure. If terminated, your Service Mark license, your right to use the Trade Secrets and your lease of the Store and Equipment, shall also terminate. You are required to surrender and turn over possession of any and all rights in and to the store premises to 7-Eleven and to transfer to 7-Eleven all of your right, title and interest in and to the Inventory, together with the Proceeds thereof, in consideration of the cost thereof reflected on the books and records for the franchise, such cost to be credited and paid against, and in reduction of, the amount owed by you to 7-Eleven on the Open Account shown on such books and records, with any surplus to be credited to your Open Account in accordance with the close out procedures set forth in the Franchise Agreement.

9. 7-Eleven's investigation into the activities described above is ongoing. As 7-Eleven's investigation continues, 7-Eleven reserves the right, without limiting its other rights (including, without limitation, seeking damages), to issue further and additional curable and/or non-curable notices of material breach or notices of termination (or both) all without prejudice to the validity of this notice.

10. 7-Eleven believes the conduct identified as breaches above is illegal. 7-Eleven will do what it believes is appropriate with its information and will not discuss with you in any fashion the reporting of this conduct to the appropriate legal authorities.

11. 7-Eleven recommends that you retain counsel as soon as possible. The lawyer identified below is 7-Eleven's lawyer. All further communications you or your lawyer intend for 7-Eleven that concern the matters in this letter should occur through him:

                Christian C. Burden
                Quarles & Brady LLP
      101 East Kennedy Boulevard, Suite 3400
                Tampa, Florida 33602
              chris.burden@quarles.com
                (813) 387-0300 (office)
                (813) 992-5282 (mobile)

Mr. Kabeer Khan
August 7, 2014
Page 6

12. None of the following acts by 7-Eleven (without limitation) shall be construed as a consent to or a waiver of any act or default, or, upon your failure to cure, to any kind of waiver of 7-Eleven's right declare a termination of the Franchise Agreement or any ancillary contracts and agreements, or to take any action to recover possession of the Store, Equipment and Inventory, or to sue for damages or other relief:

   a) collecting or accepting the 7-Eleven Charge;

   b) debiting your Open Account with the 7-Eleven Charge;

   c) continuing to allow you the use of the Store, Equipment and Inventory, Service Marks, Trade Secrets, or the 7-Eleven System;

   d) continuing to otherwise transact business with you or on your behalf, including but not limited to, furnishing you with the various benefits and services provided for in the Agreements, including paying for your Inventory purchases.

7-ELEVEN, INC.

_____
Mary Cadigan, Market Manager

☐ By certified mail, return receipt requested

   Date postmarked: _____

☐ In person to _____

   Time: _____ a.m./p.m.

   Date: _____

   By: _M. CADIGAN, MM 8/6/14_